IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal Action No. 7:17-cr-00033-01 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| BOBBY NELSON COLLINS, JR. ) | United States District Judge |

**MEMORANDUM OPINION**

Bobby Nelson Collins moves for relief from his sentence pursuant to 28 U.S.C. § 2255. (Dkt. Nos. 172, 198.) The government moves to dismiss. (Dkt. No. 196.) On June 1, 2022, the court issued an opinion and order taking Collins' § 2255 motion under advisement with respect to Collins' claim that his attorney was ineffective for not appealing the court's denial of his motion to suppress. (Dkt. No. 208.) The court addressed the balance of Collins' claims and explained that it would issue an order denying Collins' motion and granting the government's motion in all other respects following the resolution of Collins' ineffective-assistance-of-counsel claim. (*Id.* at 8 n.5.) The court also appointed counsel to represent Collins and held an evidentiary hearing on October 28, 2022. (Dkt. Nos. 230, 234, 235.) The parties each submitted post-hearing briefs. (Dkt. Nos. 231, 232.)

For the reasons stated below, the court finds that Collins' ineffective-assistance claim is not supported by the preponderance of the evidence. The court also finds that equitable tolling does not apply to the period for filing a direct appeal. Therefore, the court will issue an order granting the government's motion to dismiss and denying Collins' § 2255 motion.

I.  BACKGROUND

A. **Conviction and Sentencing**

Between February 10 and February 15, 2017, investigators made three controlled purchases of heroin from Collins in the City of Roanoke. Collins was indicted on four counts charging distribution and possession of a firearm in furtherance of drug trafficking. (Presentence Report (PSR) ¶ 2, Dkt. No. 136.) He pleaded guilty to a single count of heroin distribution, which corresponded to the sale made on February 15, 2017.

Before pleading guilty, Collins moved to suppress evidence seized in relation to a search of a hotel room registered in his name because he did not consent to the search. (Dkt. No. 80.) The court denied this motion on March 20, 2018. (Dkt. No. 89.) Collins pled guilty on April 11, 2018. (Dkt. Nos. 94–96.)

At sentencing, Collins' criminal history score was 17, resulting in a criminal history category of VI. The guideline range after acceptance of responsibility was 130–162 months. On March 6, 2020, Collins was sentenced to 144 months of incarceration and six years of supervised release. Collins is detained at FCI Cumberland and is scheduled to be released in 2027.[1]

Collins' attorney at the time of his guilty plea and sentencing was James Turk.

B. **Evidentiary Hearing**

1. **Collins' Testimony**

Collins testified that he met with Turk approximately ten times over the course of his case. (12/28/22 Evid. Hr'g Tr. 8, Dkt. No. 234.) This included two times before Collins agreed to a plea, once over the phone and once in person. (*Id.*)

---

[1] The court denied Collins' motion for compassionate release on October 27, 2021. (Dkt. No. 200.)

2

After his motion to suppress was denied, Collins testified that he directed Turk to appeal the court's decision. (*Id.* at 9.) Turk told Collins that he could not appeal the decision. (*Id.*) Collins expected Turk to write the appeal. (*Id.*) Collins claims that he asked Turk to appeal the suppression issue "right in the courtroom" after hearing about it. (*Id.* at 15.) This was at the suppression hearing. (*Id.* at 16.)

Regarding the plea deal, Collins testified that Turk "didn't go over it thoroughly. It wasn't thoroughly explained. And I felt like he should have told me, like, issues about the suppression. He didn't tell me anything." (*Id.* at 10–11.) Turk discussed the deal with Collins in a meeting room at Collins' jail. (*Id.* at 11.) According to Collins, Turk explained that there was a waiver, but he "never explained" that Collins would be waiving his right to appeal the suppression issue. (*Id.* at 11–12.) Collins only thought he was waiving the right to otherwise appeal his guilty plea. (*Id.* at 12.) Collins thought the same at his plea colloquy with the court. (*Id.*)

Turk did not speak with Collins immediately after the sentencing. (*Id.* at 14.) When he was returned to the jail, Collins "didn't see [Turk] because COVID hit and they moved me from one pod to the next . . . . there was massive amounts of COVID. People had COVID, and it was really weird. It was strange." (*Id.*) Collins spoke to Turk later over the phone and asked him to appeal, but Turk told Collins he could not appeal because the time to appeal had expired. (*Id.*) Collins also wrote a letter asking Turk to appeal. (*Id.* at 18–19.)

Collins testified about COVID policies in jail:

> Well, I left the jail, they drove to us Gilmer [sic] where we were locked down and we would come out Monday, Wednesday, and Friday for five minutes only to shower. And we did that—I think roughly about two months we did that process. I actually wrote the judge. I was like, Your Honor, you know, I was sent from a place where I didn't think there was any COVID to a place where there's

3

> people, you know, falling out. I don't know; I was freaking out. It was pretty strange times at that time.

(*Id.* at 17.)

Collins testified that at the time he entered his plea, he did not understand that he would have voided the plea agreement if he appealed the suppression issue. (*Id.* at 26.) However, had Collins known of the implications, he still would have pursued an appeal instead of pleading guilty. (*Id.* at 26, 35.) Collins admitted that, at the plea hearing, he affirmed that he was satisfied with Turk's representation of him and that he understood he would be breaching or violating the terms of his plea agreement if he pursued an appeal. (*Id.* at 37–38.)

Collins stated that he gained "numerous amounts of enemies" as a result of providing assistance to the government. (*Id.* at 27.) He understood that cooperating with the government would have negative implications, but "not to the degree" that resulted, noting that he got into a fight in jail right after his plea. (*Id.*)

### 2. Turk's testimony

Turk has been practicing law for 37 years. (*Id.* at 40.) Most of his legal work experience has been in criminal law. (*Id.*) Turk testified that he has never failed to file a notice of appeal requested by a client. (*Id.*) He would do so even if the client had waived his right to appeal. (*Id.* at 41.) Turk would advise his client of the consequences, but if the client still wanted to file an appeal, he would do so. (*Id.*)

Turk testified that Collins was one of the more active clients he ever had in terms of involvement with his case. (*Id.* at 41.) Collins changed his mind about strategy and tactics many times. (*Id.* at 42.) Turk was not the first lawyer to represent Collins in this matter; Turk recalled that there were two or three other attorneys prior to him. (*Id.*; *see also* Dkt. Nos. 31, 32, 34, 35, 38, 61–65, 71, 73 (docket entries showing change of representation).)

4

On the day that the court denied Collins' motion to suppress, Turk recalled that Collins asked to give a proffer to the government. (Hr'g Tr. 42.) When Turk came into the case, he was advised that Collins had already made one or two proffers. (*Id.* at 42–43.) Collins' request resulted in several meetings and follow-up meetings with the government. (*Id.*)

Turk does not recall Collins ever asking to appeal the court's denial of his motion to suppress, including on the day of the suppression hearing. (*Id.* at 43–44.) Turk reviewed his entire case file, and there was one letter Collins sent to Turk between his plea and sentencing that mentioned Turk "needed to follow up on an appeal of that particular issue." But Turk "can't tell the Court that I can recall specifically a discussion about that issue, because I can't." (*Id.* at 45.)[2] Turk continued:

> A. . . . . But if he—but I can tell you, after that we did meet—I met with Bobby Colins multiple, multiple times, probably more so than most any other client I've represented in that type of case, to be honest with you.
>
> And so I can tell you that during—after those letters, I did not respond by letters to a lot of the requests, but I did always go by and speak with him. And I can tell you that the issues that we intended to preserve initially were those that were objected to in the presentence report.
>
> And the issue of—and I explained to him that it was my belief, being his lawyer and knowing the law, that if he went through with an appeal—and, again, we were still attempting to get him as much credit for cooperating with the government as we could. And he understood that completely, because he repeatedly asked me to go back and ask the government about, you know, his cooperation . . . . And he asked me to repeatedly go back and ask them about his potential testimony and need for his testimony in that case . . . .

---

[2] *See* Dkt. No. 227-1; *see also* Affidavit of James Turk, Dkt. No. 227 (explaining that the "only written request concerning appealing the judge's ruling was by letter dated December 4, 2018. On page three of the six page handwritten letter, Mr. Collins stated: 'I asked you to appeal the decision of the legality of the search of the hotel. You did not have yet to do that.' After he was sentenced, Mr. Collins never requested that I appeal any decision").

5

> And I told him as well that that—you know, considering going forward, when you enter into a plea agreement, you do and you're required to waive certain rights, and those include your right to appeal issues, and if you do not follow that language and your agreement in the plea agreement, that can constitute a violation of your plea agreement. You certainly are not looking at getting substantial assistance or any benefit from the government likely if you go with that route. He understood that completely.
>
> Q.  And he expressed his understanding to you?
>
> A.  Yes.
>
> Q.  On more than one occasion?
>
> A.  Yes. And I will tell you, Mr. Collins is—and I refer to him as Bobby. Bobby is one of the more bright, intelligent, more knowledgeable defendants that I've represented. He is, and I think I told the Judge that in his sentencing hearing, and that is true. He's a bright—you know, a bright man in some difficult circumstances because of his drug addiction, which he likewise had told the Court about. But he is—you know, he's a quick study on his own behalf.

(*Id.* at 45–47.)

At sentencing, Collins and Turk were still considering various objections to the presentence investigation report and the interplay of those objections with Collins' obligations under the plea agreement. (*Id.* at 47–51.) Turk conveyed to Collins that "we still were in a precarious set of circumstances because of all these objections that were being made." (*Id.* at 47.) On the day Collins was sentenced, Turk and Collins met with the United States Attorney before the hearing. (*Id.* at 49.) The parties came to an agreement that the government would recommend 144 months, which was the ultimate sentence. (*Id.*) Turk told Collins that he thought this was a good decision. (*Id.*) He explained: "I thought that was smart and wise on his part. And I told him that what that would entail would be to withdraw the objections that we had made and that we had intended to argue that morning, and there would be an acceptance of the 144 months and that would be his sentence." (*Id.*) Turk also explained that Collins "would be

6

told that he could not appeal anything. At that point, if he did, that would constitute a violation of his plea agreement, and he could come back to court and be looking at a bunch more time if it was considered a violation." (*Id.* at 49–50.) Turk believed that Collins had a full understanding that the objections would be withdrawn and that he would not be appealing anything. (*Id.* at 50.)

Turk does not recall any phone calls from Collins asking to appeal the motion to suppress. (*Id.* at 51.) "That never was requested . . . . I've never been told that he wanted me to preserve any appeal at all, or—or telling me that I missed an appeal that he requested that I file. That was never said to me as well." (*Id.*)

## II. ANALYSIS

### A. Section 2255

Under § 2255, a movant may attack his sentence or conviction on the grounds that it was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. § 2255(a). The movant bears the burden of proving grounds for collateral relief by a preponderance of the evidence. *See United States v. Cook*, Criminal Action No. 1:11-cr-188, 2019 WL 921448, at *1 (E.D. Va. Feb. 25, 2019) (citing *Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir. 1967)).

The failure to file a notice of appeal is per se ineffective of counsel when the request to note an appeal was unequivocal. *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993). This is true even if the defendant waived his right to appeal. *Id.* at 41; *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007). The failure to file a notice of appeal under such circumstances justifies relief under § 2255. The proper procedure would be for the court to vacate its previous judgment, enter a new judgment from which the defendant may file an appeal, dismiss any

remaining claims in the § 2255 motion without prejudice, and appoint counsel to assist the defendant on direct appeal. *See Dyer v. United* States, Case No. 5:14-cv-19140, 2016 WL 1019438, at *5 (S.D.W. Va. Feb. 19, 2016) (collecting cases).

## B. Notice of Appeal

As outlined above, Collins testified that he directed Turk to appeal the suppression issue. Turk denied that Collins asked him to appeal. Turk testified that he explained and counseled Collins about the interplay between his plea agreement and the implications for his right to appeal. Turk also testified to his impression that Collins understood that accepting the plea agreement, and getting credit for cooperation, would result in forfeiture of his right to appeal. Collins expressed this understanding to the court at his plea hearing. The court finds Turk's testimony to be persuasive and compelling. In this context, the court concludes that Collins has not proven by a preponderance of the evidence that he unequivocally directed Turk to appeal the suppression issue. Collins may have desired to appeal the suppression issue when the ruling went against him, but the evidence suggests that he understood the waiver of his right to appeal encompassed by his plea agreement, and he did not ask Turk to appeal following the acceptance of that plea agreement and the imposition of his sentence.

## C. Equitable Tolling

Collins also argues that equitable tolling may apply because the time to appeal his sentence encompassed the onset of shutdowns related to COVID-19. Collins contends that he and his attorney had a misunderstanding as to whether an appeal was to be filed, and COVID-19 prevented Collins from clearing up any misunderstanding. The cases regarding equitable tolling cited and discussed by Collins involve equitable tolling of the limitations period for filing a § 2255 motion. *See, e.g., United States v. Muse*, No. 7:17-CR-0011-1, 2021 WL 5855291 (W.D.

Va. Dec. 9, 2021). In this action, Collins' § 2255 motion has been timely filed, but he is trying to use his § 2255 motion as an avenue to extend the time to file a direct appeal. This argument is foreclosed by the Fourth Circuit's holding that the deadline to file an appeal in a criminal case, *see* Fed. R. App. P. 4(b), is a "mandatory claim-processing rule that must be strictly applied . . . and equitable doctrines are unavailable to extend the deadline." *United States v. Marsh*, 944 F.3d 524, 527 (4th Cir. 2019). "Because the courts 'may not disregard' a clear intent to make a claim-processing rule mandatory," Collins' late filing under Rule 4(b) "cannot be excused nor his deadline extended through 'equitable approach[es],' like the doctrine of equitable tolling." *Id.* at 531 (quoting *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 714 (2019)). Therefore, equitable tolling cannot be used to salvage Collins' appeal.

Moreover, the court must stress that there is nothing to salvage. The evidence before the court demonstrates that Collins understood that he had waived his right to appeal and did not unequivocally direct Turk to file an appeal. More specifically, the evidence suggests that Collins did not try, and thus was not thwarted by COVID-19 in any attempt, to pursue an appeal following his sentencing.

**D. Certificate of Appealability**

When issuing a final order adverse to the § 2255 movant, the court must issue or deny a certificate of appealability. *See* Fed. R. Gov. § 2255 Proc. 11(a). A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

The court declines to issue a certificate of appealability because Collins has not made a substantial showing of the denial of a constitutional right and reasonable jurists could not debate whether the court should have resolved Collins' claims differently.

### III.  CONCLUSION

For the foregoing reasons, the court finds that Collins has not proven his ineffective-assistance claim by a preponderance of the evidence, and Collins is not entitled to equitable tolling.  The court will issue an appropriate order.

Entered: December 21, 2022.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge